UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT G. RAHSMAN,           :   **CIVIL NO. 1:05-CV-1931**
                            :
         Plaintiff      :   (Judge Conner)
                            :
        v.           :   (Magistrate Judge Smyser)
                            :
DEWBERRY-GOODKIND, INC.,    :
                            :
        Defendant     :

## REPORT AND RECOMMENDATION

I.  Background and Procedural History.

      The plaintiff, Robert G. Rahsman, commenced this case by filing a complaint in the Court of Common Pleas of Cumberland County, Pennsylvania.  On September 23, 2005, the defendant, Dewberry-Goodkind, Inc., removed the case to this court.

      The defendant is the plaintiff's former employer.  The plaintiff claims that the defendant fired him because of his age and because of his disability.  The complaint contains three counts.  Count I is a claim pursuant to the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951, et seq.  Count II is a claim based on the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.  Count III is a claim pursuant to the Americans with Disabilities Act, 29 U.S.C. 12101, et seq.

The case is on Judge Conner's September 2006 trial list.

On May 5, 2006, the defendant filed a motion for summary judgment, a statement of undisputed material facts, a brief and documents in support of its motion.  On June 5, 2006, after requesting and receiving an extension of time, the plaintiff filed a response to the defendant's statement of undisputed material facts, a brief and documents in opposition to the motion for summary judgment.  The defendant filed a reply brief on June 21, 2006.

II.  Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003).  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

III.  Undisputed Facts.

Unless otherwise indicated, the following facts are not in dispute for purposes of the defendant's motion for summary judgment.

The defendant is a professional services firm that offers planning, engineering, architecture, program management, surveying and mapping services to its clients, which include commercial and institutional organizations. *Statement of Undisputed Material Facts of Defendant Dewberry-Goodkind, Inc. in Support of Its Motion for Summary Judgment at ¶1 and Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶1.*  The plaintiff first began working for

3

the defendant in its Carlisle, Pennsylvania office in May of 2000. *Id. at ¶2.*

William Brown, the Branch Manager of the defendant's Carlisle office, made the decision to hire the plaintiff. *Id. at ¶3.* At the time that he was hired, the plaintiff was fifty-one years old and Brown was forty-nine years old. *Id. at ¶4.*

The plaintiff is an experienced hydrogeologist who was hired by the defendant as part of an effort to expand the services it offered to its clients. *Id. at ¶5.* According to the plaintiff, he was also qualified to provide and provided general geological services. *Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶1.* Prior to hiring the plaintiff, the defendant had no in-house hydrogeological capabilities in Carlisle and was required to utilize the services of independent contractors for hydrogeological work. *Statement of Undisputed Material Facts of Defendant Dewberry-Goodkind, Inc. in Support of Its Motion for Summary Judgment at ¶6 and Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶6.* The defendant explained to the plaintiff when he was hired that it believed that his background in hydrogeology would be a great asset in the development of a new service line for the office and firm. *Id. at ¶8.* The defendant thought that, by adding this additional service, it would be better able to market its Municipal Services Department to both new and existing clients. *Id. at ¶9.*

4

In his position as a hydrogeologist, the plaintiff worked primarily with the Municipal Services Department. He worked with other employees to locate and develop sources of groundwater for the defendant's clients. *Id. at ¶10.* According to the plaintiff, he also supplied general geological services as requested. *Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶10.*

The plaintiff spent approximately fifty percent (50%) of his time performing office work, which work normally consisted of sitting at a desk, either typing on a computer or talking on the telephone. *Statement of Undisputed Material Facts of Defendant Dewberry-Goodkind, Inc. in Support of Its Motion for Summary Judgment at ¶12 and Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶12.* The remaining fifty percent (50%) of the plaintiff's time was spent performing "field work," which work involved driving to jobsites, walking, standing and sitting. *Id.*

As a professional services firm, the defendant bills its clients on an hourly basis for time spent by its employees working on client projects. *Id. at ¶13.* According to the defendant, for each employee whose time is billed to clients the defendant internally sets goals for the employee which reflect the percentage of hours during which the employee works that should be spent on work which can be billed to clients. *Statement of Undisputed Material Facts of Defendant Dewberry-*

5

*Goodkind, Inc. in Support of Its Motion for Summary Judgment at ¶14.* While that target can be as high as one hundred percent (100%), the billable target set by the defendant for the plaintiff was seventy-five percent (75%). *Id.* The plaintiff denies that any billability goals or targets were communicated to him. *Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶14.*

For the thirty-two (32) weeks during which he was employed by the defendant in 2000, the plaintiff was paid for a total of 1,280 hours, ninety-two (92) of which represented paid leave. *Statement of Undisputed Material Facts of Defendant Dewberry-Goodkind, Inc. in Support of Its Motion for Summary Judgment at ¶15 and Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶15.* Of the plaintiff's remaining 1,188 working hours, 689 were billable to the defendant's clients, while 499 were billed for accounting purposes to administrative matters. *Id.*

In the calendar year 2001, the defendant paid the plaintiff for a total of 2,088 hours, of which 187 represented paid time off. *Id. at ¶16.* Of the 1,901 working hours for 2001, 1,003 were billable to the defendant's clients and 898 were billed for accounting purposes to administrative matters. *Id.*

From January 2002 through the beginning of June 2002, the plaintiff was paid by the defendant for a total of 912 hours, of which twenty-eight (28) represented paid leave. *Id. at ¶17.* Of the remaining 884 working hours during this twenty-three (23) week time period, 500.5 were billable to the defendant's clients, while 383.5 were billed for accounting purposes to administrative matters. *Id.*

On or about June 8, 2002, the plaintiff suffered a stroke, following which he was hospitalized at the Hershey Medical Center from June 8, 2002 until June 14, 2002. *Id. at ¶18.* On June 14, 2002, the plaintiff was transferred from the main hospital at Hershey Medical Center to Hershey's Rehabilitation Center, where he remained as an inpatient until July 2, 2002. *Id. at ¶19.*

Immediately following his stroke, the plaintiff was unable to drive. *Id. at ¶20.* The plaintiff was physically able to begin driving again by himself in or about late August 2002, but he was not legally permitted to drive until he passed a driving test, which test he took and passed in September 2002. *Id. at ¶21.*

On nine occasions during his medical leave of absence, the plaintiff participated in work-related meetings for the defendant, including one occasion on which he met with a co-worker while still an inpatient at the Hershey Rehabilitation

7

Center and one or two occasions on which he went into the field to observe well drilling operations. *Id. at ¶22.*

The plaintiff returned to work for the defendant full time in October of 2002. *Id. at ¶23.* The plaintiff was capable of performing all of the essential duties of his job, and he never asked the defendant for any accommodation to enable him to perform those duties. *Id. at ¶25.*

From October 14, 2002 through the end of December 2002, the plaintiff was paid by the defendant for a total of 456 hours, of which forty-four (44) represented paid leave. *Id. at ¶34.* Of the remaining 412 working hours during this eleven and a half week time period, 359 were billable to the defendant's clients, and fifty-three (53) were billed for accounting purposes to administrative matters. *Id.* According to the defendant, although the plaintiff was billing above the goal set for him during these two and a half months, the plaintiff was unusually busy during this time period because he was addressing projects which had been placed on hold while he was on leave. *Statement of Undisputed Material Facts of Defendant Dewberry-Goodkind, Inc. in Support of Its Motion for Summary Judgment at ¶35.* The plaintiff, on the other hand, asserts that he worked through his recovery and that he is not aware of any projects that were held pending his return. *Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶35.* The defendant also asserts that from October 2002 through December 2002 it recorded and billed to its clients the

work that the plaintiff had performed while he was on leave.
*Statement of Undisputed Material Facts of Defendant Dewberry-Goodkind, Inc. in Support of Its Motion for Summary Judgment at ¶36.*   The plaintiff asserts that he was to receive comp time for the work he performed while recuperating and that it is unclear why such work would be deducted from any billability analysis upon his return. *Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶36.*

On July 30, 2003, without prior notice, Brown told the plaintiff that as of August 1, 2003 he was terminated. *Complaint at ¶21 and Answer to Complaint at ¶21.*   Brown made the decision to terminate the plaintiff's employment. *Statement of Undisputed Material Facts of Defendant Dewberry-Goodkind, Inc. in Support of Its Motion for Summary Judgment at ¶45 and Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶45.*

The defendant contends that the plaintiff was fired because there was not enough current hydrogeological work or projected hydrological work to justify the employment of a hydrogeologist on a full time basis. *Statement of Undisputed Material Facts of Defendant Dewberry-Goodkind, Inc. in Support of Its Motion for Summary Judgment at ¶43.*

The plaintiff was not replaced and his duties were not transferred to another position or positions. *Id. at ¶44.* According to the plaintiff, because of the nature of the work

9

he was replaced by the outsourcing of his work and by the adjusting of the mix of work accepted. *Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶44.* After his termination, the defendant engaged the plaintiff as an independent contractor to perform some hydrogeological work. *Statement of Undisputed Material Facts of Defendant Dewberry-Goodkind, Inc. in Support of Its Motion for Summary Judgment at ¶46 and Plaintiff's Response to Defendant's Statement of Material Undisputed Facts at ¶46.*

IV.  Disability Claims.

     The plaintiff presents disability discrimination claims under the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA).  An "analysis of an ADA claim applies equally to a PHRA claim."  *Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 306 (3d Cir. 1999). Accordingly, we will only discuss the plaintiff's ADA claim because our analysis of that claim is coterminous with the PHRA claim. *Williams v. Philadelphia Housing Auth. Police Dept.,* 380 F.3d 751, 761 n.6 (3d Cir 2004).

     A. The ADA.

     The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation,

10

job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

In cases where there is no direct evidence of discrimination, the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) applies. *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 157 (3d Cir. 1995)(holding that standards for indirectly proving disparate treatment used in Title VII and ADEA cases applies in ADA cases).  In cases in which the burden-shifting framework of *McDonnell Douglas, supra,* applies:

> [T]he plaintiff must first make a prima facie showing of discrimination.  If the plaintiff cannot do so, the defendant is entitled to judgment as a matter of law. If the plaintiff does establish a prima facie case, the defendant must produce some evidence of a legitimate, nondiscriminatory reason for the adverse employment action.  Once it does so, the burden remains with the plaintiff to prove by a preponderance of the evidence that the proffered reason was pretextual and that unlawful discrimination was the real reason for the employment action.

*Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 352 n.4 (3d Cir. 1999)(citations omitted).

To establish a *prima facie* case under the ADA, the plaintiff must demonstrate that he: 1) has a disability; 2) is a qualified individual; and 3) has suffered an adverse employment decision as a result of his disability. *Skerski v. Time Warner Cable Co.,* 257 F.3d 273, 278 (3d Cir. 2001).

B. Disability under the ADA.

The defendant contends that the plaintiff can not establish that he has a disability under the ADA.

Under the ADA, an individual has a disability if he or she: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2).

Although the ADA does not define the terms "major life activities" or "substantially limits," these terms are defined in regulations promulgated by the Equal Employment Opportunity Commission (EEOC).  EEOC regulations define "major life activities" for ADA purposes as: "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(i).  The EEOC regulations indicate that an individual's ability to perform an activity is "substantially limited" for ADA purposes if the individual is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).  A number of factors are relevant in determining whether an individual is substantially limited in a major life activity: 1) the nature and severity of the impairment; 2) the duration or expected duration of the impairment; and 3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).  "[A] temporary, non-chronic impairment of short duration is not a disability covered by the ADA."  *Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 380 (3d Cir. 2002).  For example, the EEOC's interpretative guidance in the appendix to the regulations points out that a broken leg that takes eight weeks to heal is an impairment of fairly brief duration. *See* 29 C.F.R. pt 1630 App. § 1630.2(j).  Although the term "substantially" in the phrase "substantially limits" suggests that it means "'considerable or to a large degree,' . . . the Supreme Court has made clear that '[t]he Act addresses substantial limitations on major life activities, *not utter inabilities.'"* *Emory v. AstraZeneca Pharmaceuticals LP.,* 401 F.3d 174, 179 (3d Cir. 2005)(italics in original)(quoting *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197 (2002) and *Bragdon v. Abbott,* 524 U.S. 624, 641 (1998)).

### 1. Actual Disability.

The plaintiff contends that he was substantially limited in his ability to walk.

The plaintiff states in his brief that when he returned to work in October he was still required to wear a brace and could not walk any appreciable distances.  He states in his declaration that he wore a brace from the time he returned to work in October of 2002 until December of 2002 and that thereafter he walked with a noticeable limp. *Doc. 26 at ¶22.*

The relevant determination is whether the plaintiff had a disability at the time of the adverse employment decision. *Taylor, supra,* 184 F.3d at 308.  That the plaintiff still had to wear a brace and could not walk any appreciable distances when he returned to work in October of 2002 and that he had to wear a brace until December of 2002, does not indicate that he was substantially limited in his ability to walk at the time he was fired in July of 2003.  As to his limp, he has not pointed to any evidence regarding the severity of his limp or the effect the limp had on his ability to walk at the time of his discharge.

The plaintiff also states that to this day he can not walk a half of a mile without a break.[1]  It is reasonable to

---

[1] Actually, the plaintiff states in his declaration that "[e]ven to this day I could walk a half mile without breaking for a rest." *Doc. 26 at ¶22.*  Like the defendant, given the plaintiff's statement in his brief that to this day he could not walk a half mile without a break, we will assume that the statement in his declaration that he could walk a half mile without breaking was the result of a typographical error.  The defendant argues that the statement in the plaintiff's declaration that he could not walk a half mile without breaking for a rest is inconsistent with his

assume that, if he can not walk a half of mile without a break today, he could not have walked a half a mile without a break at the time of his discharge.  Thus, the question is whether a person who is not able to walk a half mile without a break is substantially limited in walking.

"It is difficult, indeed perhaps not possible, to draw a bright line delineating the point at which a condition affecting an employee's ability to walk can be regarded as a disability within the ADA." *Kelly v. Drexel Univ.,* 94 F.3d 102, 108 (3d Cir. 1996).  A person who can only walk for very brief periods of time is substantially limited in walking. *See* 29 C.F.R. pt 1630 App. § 1630.2(j).  However, comparatively moderate restrictions on the ability to walk are not disabilities. *Kelly, supra,* 94 F.3d at 106.  The relevant question is whether the difference between the plaintiff's ability to walk and that of an average person is qualitatively significant enough to constitute a disability. *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3d Cir. 1999)

The plaintiff has failed to present evidence from which a reasonable trier of fact could conclude that the limitations

---

deposition testimony that he currently is not substantially limited in any major life activity.  Since we conclude that accepting the statement in the plaintiff's declaration the plaintiff nevertheless has not presented evidence sufficient to establish that he is substantially limited in his ability to walk, we do not address whether the statement in the plaintiff's declaration is inconsistent with his deposition testimony.

on his walking are so great, when compared to the average person, as to significantly limit his major life activity of walking. See *Wood v. Crown Redi-Mix,* 339 F.3d 682, 685 (8th Cir. 2003)(holding that a plaintiff who could walk for only one-quarter of a mile before stopping to rest was not substantially limited in the ability to walk); *Taylor*, *supra,* 177 F.3d at 186-87(concluding that the ability to walk and to stand of a plaintiff who walks with a slight limp, and who requires a ten minute break each hour when standing or walking, is not significantly less than that of an average person); *Horth v. General Dynamics Land Systems, Inc.,* 960 F.Supp. 873, 878 (M.D.Pa. 1997)(holding that a plaintiff who has difficulty walking and who walks with a limp does not have an impairment so severe as to significantly limit one of his major life activities).  Accordingly, the plaintiff has failed to present evidence sufficient to establish that he meets the first prong of the ADA's definition of disability.

    2. Record of Disability.

    The plaintiff contends that he meets the second prong of the ADA's definition of disability because he had a record of a substantial impairment of virtually all major life functions during the four month period of his initial recovery.

    The "record of" part of the definition of disability "is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting

16

impairment." 29 C.F.R. pt 1630 App. § 1630.2(k).  In order to
meet the second (record of) prong of the ADA's definition of
disability "[t]he impairment indicated in the record must be an
impairment that would substantially limit one or more of the
individual's major life activities." *Id.*  "There are many types
of records that could potentially contain this information,
including but not limited to, education, medical, or employment
records." *Id.* "A plaintiff attempting to prove the existence of
a "record" of disability must still demonstrate that the
recorded impairment is a "disability" withing the meaning of
the ADA." *Tice v. Centre Area Transp. Auth.,* 247 F.3d 506, 513
(3d Cir. 2001).

        The plaintiff has not presented any records to support
his claim that he had a record of a substantial impairment of a
major life activity.  Moreover, the fact that the defendant was
aware that the plaintiff had a stroke is not sufficient to
establish that the plaintiff had a record of an impairment that
substantially limited a major life activity. *Farkas v.
Carpenter Technology Corp.,* No. Civ.A. 05CV2741, 2006 WL 563004
at *4 (E.D.Pa. Mar. 8, 2006).  The plaintiff asserts that he
was substantially impaired in virtually all major life
functions during the period of his initial recovery.  However,
the plaintiff has not presented any evidence that any of his
records indicate that he was substantially limited in any major
life activities for more than a temporary period of a few
months.  Accordingly, the plaintiff has failed to present
evidence sufficient for a reasonable trier of fact to find that

he has established that he meets the second prong of the ADA's definition of disability.

### 3. Regarded as Disabled.

The plaintiff contends that he meets the third prong of the ADA's definition of disability because the defendant regarded him as disabled.

Under the third (regarded as) prong of the ADA's definition of disability, a person is "regarded as" having a disability if the person:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has [no impairment] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l)(1)-(3). "[E]ven an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability." *Deane v. Pocono Medical Center*, 142 F.3d 138, 144 (3d Cir. 1998). However, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly,*

*supra,* 94 F.3d at 109. "[T]he definition of "substantially limits" remains the same as it does in other parts of the statute - i.e. if the individual is attempting to establish that the employer believed the individual to be limited in the life activity of "working" then "working" must encompass a broad class of jobs." *Tice, supra,* 247 F.3d at 514.

The plaintiff has not identified the major life activity or activities as to which the defendant regarded him to be substantially limited.

The plaintiff states that after he returned to work after his stroke Kim Crawford, an engineer, was sent with him on site visits.  The defendant asserts that Crawford was sent with the plaintiff as part of her overall training as an engineer and not as any type of accommodation to the plaintiff or to provide any physical assistance to the plaintiff.  The plaintiff, on the other hand, contends that Crawford was sent with him because he was perceived by the defendant to be disabled and to provide the defendant with a set of eyes to report regarding the scope of his disabilities and limitations. However, the mere fact that the defendant sent Crawford with the plaintiff on site visits does not lead to a reasonable inference that the defendant regarded the plaintiff as substantially limited in any major life activity.

The plaintiff also contends that the concern of Thomas Ladue regarding the plaintiff's writing after his stroke

supports an inference that the defendant regarded him as disabled.  The plaintiff cites to the testimony of Randy Bailey, the head of the Telecommunications Division, that Ladue asked him to review one the plaintiff's letter-reports shortly after the plaintiff returned to work after his stroke. *Bailey Dep. at 23.*  Bailey testified that it was not within his ordinary responsibilities to review the report but that he did not think there was anything particularly unusual about being asked to review the report. *Id. at 31 & 55.*  He testified that he found some grammatical errors in the plaintiff's report and that he gave the report back to Ladue and said that it needed to be modified. *Id. at 73-74.*  He also testified that he does not recall going to any management official of the defendant and saying that the plaintiff was making serious mistakes. *Id.*  Bailey testified that he did not recall any other similar requests to review the plaintiff's reports prior to his stroke. *Id. at 27.*  The plaintiff also cites the testimony of Ladue that after the plaintiff's stroke he noticed differences in the plaintiff's writing regarding consistency of thought which had not been there before the stroke. *Ladue Dep. at 59-60.*  Ladue also testified, however, that he did not share his observation regarding the plaintiff's writing with Brown. *Id. at 63.*

Ladue's concern regarding the plaintiff's writing after the plaintiff's stroke does not supports an inference that the defendant regarded the plaintiff as substantially limited in any major life activity.  This is especially so since Brown made the decision to fire the plaintiff, Ladue testified that

he did not inform Brown of his concern, and the plaintiff has not presented any evidence that Ladue did in fact share his thoughts regarding the plaintiff's writing with Brown.

The plaintiff has failed to present evidence sufficient for a reasonable trier of fact to find that he meets the third prong of the ADA's definition of disability.

C. Recommendation regarding Disability Claims.

Since the plaintiff has failed to present evidence from which a reasonable finder of fact could find that he was disabled, the plaintiff has failed to present a *prima facie* case of disability discrimination and it will be recommended that the defendant be granted summary judgment on the plaintiff's ADA claim and his PHRA disability claim.

V. Age Claims.

In his complaint, the plaintiff raises a claim pursuant to the Age Discrimination in Employment Act and an age discrimination PHRA claim.  The defendant moved for summary judgment on the plaintiff's age discrimination claims. However, in his brief in opposition to the defendant's motion for summary judgment, the only thing that the plaintiff says about his age discrimination claims is as follows:

> Rahsman's age claim is solely in the context
> of a substantial contributing factor to the
> perception of him as being disabled and at a

> risk for recurrence of disability.  Rahsman
> does not contend that if he had not have a
> stroke his age alone would trigger the
> discrimination.

*Doc. 27 at 34.*  Based on this statement, we conclude that the

plaintiff is not pursuing his age discrimination claims as

separate claims.  Since we have already determined that the

plaintiff failed to establish a prima facie case of disability

discrimination and the plaintiff has not presented any argument

in opposition to the defendant's request for summary judgment

on his age discrimination claims, it will be recommended that

the defendant be granted summary judgment on the plaintiff's

age discrimination claims.

VI.  Recommendations.

Based on the foregoing, it is recommended that the

defendant's motion (doc. 19) for summary judgment be granted

and that the case file be closed.

/s/ J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge

Dated:  July 18, 2006.